FILED
8-19-20
CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 3:20-cr-113-J-34JBT
18 U.S.C. § 1029(b)(2)

ADRIAN KIRALY,
  a/k/a "Bighi"
ANDREI ANDREI,
  a/k/a "Tony"
BOGDAN ARDEI,
NELU ONICA,
VERGIU CORNELIU GALBENU,
  a/k/a "Cornel"
OVIDIU MECZAK,
  a/k/a "Ovi"
NEDAL AL-KHOMOS,
OVIDIU GABRIEL MUSTEATA, and
DORU MARIS

## INDICTMENT

The Grand Jury charges:

### COUNT ONE
### (CONSPIRACY TO COMMIT ACCESS DEVICE FRAUD)

#### A. Introduction

At times material to this indictment:

1. ADRIAN KIRALY, a/k/a "Bighi" was a resident of Georgia although a citizen of Romania, who lived and traveled throughout the eastern and southeastern United States.

2. ANDREI ANDREI, a/k/a "Tony" was a resident of Georgia and New York although a citizen of Romania, who lived and traveled throughout the eastern and southeastern United States.

3. BOGDAN ARDEI was a resident of Georgia and New York although a citizen of Romania, who lived and traveled throughout the eastern and southeastern United States.

4. NELU ONICA was a resident of Georgia and New York although a citizen of Romania, who lived and traveled throughout the eastern and southeastern United States.

5. VERGIU CORNELIU GALBENU, a/k/a "Cornel" was a resident of Georgia and New York although a citizen of Romania, who lived and traveled throughout the eastern and southeastern United States.

6. OVIDIU MECZAK, a/k/a "Ovi" was a resident of Georgia and New York although a citizen of Romania, who lived and traveled throughout the eastern and southeastern United States.

7. NEDAL AL-KHOMOS was a resident of Georgia and New York although a citizen of Jordan, who lived and traveled throughout the eastern and southeastern United States.

8. OVIDIU GABRIEL MUSTEATA was a resident of Georgia and New York although a citizen of Romania, who lived and traveled throughout the eastern and southeastern United States.

9. DORU MARIS was a resident of Georgia although a citizen of Romania, who lived and traveled throughout the eastern and southeastern United States.

10. The term "access device" means any card, plate, code, account number, electronic serial number, mobile identification number, personal identification number, or other telecommunications service, equipment, or instrument identifier, or other means of account access that can be used alone or in conjunction with another access device to obtain money, goods, services, or any other thing of value, or that can be used to initiate a transfer of funds (other than a transfer originated solely by paper instrument).

11. A credit card or debit card was an "access device." A credit card was a thin plastic card, usually 3-1/8 inches by 2-1/8 inches, that contained identification information and authorized the person named on the credit card to make charges for which he or she would be billed periodically by the card issuer. A debit card looked, acted, as and contained the same information as a credit card, but withdrew the money immediately from the card holder's affiliated bank account.

12. Each credit or debit card account had a unique number issued to it. A credit card or debit card account number was also an "access device." Credit card issuers, such as companies like VISA, American Express, MasterCard, Discover, and some federally insured banks and credit unions, placed personal information on each card by physically stamping or embossing information such as the account number, the account holder's name, and the expiration date for the account. Credit card issuers and financial institutions also programmed the magnetic strip on the back of the card with the account holder's account number, name, and the expiration date for the account.

13. The term "counterfeit access device" means any access device, including a credit card, debit card, credit card number, or debit card number that is counterfeit, fictitious, altered, or forged, or an identifiable component of an access device or a counterfeit access device.

14. The term "unauthorized access device" means any access device, including a credit card, debit card, credit card number, or debit card number that is lost, stolen, expired, revoked, canceled, or obtained with the intent to defraud.

15. The term "means of identification" includes any name or number that may be used, alone or in conjunction with any other information, to

identify a specific individual, including any access device. A credit card or debit card number was a means of identification.

16. A "skimmer" is a small, electronic device that can be placed on ATM machines or credit card readers to intercept and store credit card or debit card information, which can be downloaded at a later time.

17. The term "device making equipment" means any equipment, mechanism, or impression designed or primarily used for making an access device or a counterfeit access device. A credit card embossing machine and a magnetic strip reader/re-encoder are examples of device making equipment.

## B. The Conspiracy

18. From in or about early 2019, and continuing through in or about June 2020, in the Middle District of Florida, and elsewhere,

ADRIAN KIRALY,
a/k/a "Bighi"
ANDREI ANDREI,
a/k/a "Tony"
BOGDAN ARDEI,
NELU ONICA,
VERGIU CORNELIU GALBENU,
a/k/a "Cornel"
OVIDIU MECZAK,
a/k/a "Ovi"
NEDAL AL-KHOMOS,
OVIDIU GABRIEL MUSTEATA, and
DORU MARIS,

the defendants herein, did knowingly and willfully conspire, combine, confederate, and agree with each other and with individuals both known and unknown to the Grand Jury, to commit certain offenses, to wit:

    a.    to knowingly and with intent to defraud produce, use, and traffic in one or more counterfeit access devices, said conduct affecting interstate and foreign commerce, in violation of 18 U.S.C. § 1029(a)(1);

    b.    to knowingly and with intent to defraud produce, traffic in, have control or custody of and possess device making equipment, said conduct affecting interstate and foreign commerce, in violation of 18 U.S.C. § 1029(a)(4); and

    c.    to knowingly and with intent to defraud, effect transactions, with one or more access devices issued to another person or persons, to receive payment or any other thing of value during any one year period, with the aggregate value being $1000.00 or more, said conduct affecting interstate and foreign commerce, in violation of 18 U.S.C. § 1029(a)(5).

### C. Manner and Means of the Conspiracy

19.    The manner and means by which the defendants sought to accomplish the purpose of the conspiracy included, among other things:

a. It was a part of the conspiracy that the defendants and others would and did install, attempt to install and cause to be installed skimming devices on various bank ATMs and on point of sale terminals in the Middle District of Florida and elsewhere in order to collect debit and credit card account numbers and account information.

b. It was further part of the conspiracy that the defendants and others would and did install and attempt to install hidden cameras on various bank ATMs to capture the card holder's personal identification number ("PIN") when the card holder used a credit or debit card at the ATM.

c. It was further part of the conspiracy that the defendants and others would and did remove previously installed skimming devices and cameras from various bank ATMs and point of sale terminals and download the stolen account numbers, account information, and PINs.

d. It was further part of the conspiracy that the defendants and others would and did possess hundreds of unauthorized credit card and debit card account numbers, some most of which originated from financial institutions headquartered outside the State of Florida.

e. It was further part of the conspiracy that the defendants and others would and did obtain blank credit, bank, and gift cards and

encode them to have unauthorized debit card account numbers embedded into each card's magnetic strip.

 f. It was further part of the conspiracy that the defendants and others would and did use and attempt to use the counterfeit and unauthorized debit cards to withdraw cash from bank ATMs located outside the State of Florida.

 g. It was further part of the conspiracy that the defendants and others would and did share in the proceeds of the fraud.

 h. It was further part of the conspiracy that the defendants and others would and did perform acts and make statements to hide and conceal and cause to be hidden and concealed the purpose of the conspiracy and the acts committed in furtherance thereof.

### D. Overt Acts

20. In furtherance of the conspiracy, and to effect the object thereof, the following overt acts, among others, were committed in the Middle District of Florida and elsewhere:

 a. On or about March 13, 2019, at the direction of ADRIAN KIRALY, a/k/a "Bighi", an unindicted co-conspirator known as "Scared Ady" attempted to remove a skimming device on a point of sale device in a Corningware store located in St. Augustine, Florida.

b.   On or about March 22, 2019, ADRIAN KIRALY, a/k/a "Bighi", ANDREI ANDREI, a/k/a "Tony", BOGDAN ARDEI, and other co-conspirators encoded blank prepaid cards and gift cards with unauthorized debit account numbers in each card's magnetic strip in New Orleans, Louisiana.

c.   On or about March 22, 2019, BOGDAN ARDEI, using a counterfeit access device, made an unauthorized withdrawal of $720 at an ATM at the French Quarter branch of Regions Bank located in New Orleans, Louisiana from an account ending in 4035, belonging to A.M.S. and T.J.S., whose information was intercepted without their knowledge or permission.

d.   On or about March 23, 2019, ANDREI ANDREI, a/k/a "Tony", using a counterfeit access device, made an unauthorized withdrawal of $100 at an ATM at the Uptown Branch of Regions Bank, located in New Orleans, Louisiana from an account ending in 4395 belonging to L.B.D., whose information was intercepted without L.B.D.'s knowledge or permission.

e.   On or about April 12, 2019, ANDREI ANDREI, a/k/a "Tony", and BOGDAN ARDEI, attempted to install a skimming

9

device on an ATM at a Navy Federal Credit Union branch located at 9583 Regency Square in Jacksonville, Florida.

 f. On or about April 12, 2019, ANDREI ANDREI, a/k/a "Tony" and BOGDAN ARDEI, attempted to install a skimming device on an ATM at a Navy Federal Credit Union branch located at 150 Riverside Avenue in Jacksonville, Florida.

 g. On or about April 13, 2019, ANDREI ANDREI, a/k/a "Tony", attempted to install a skimming device on an ATM at a Navy Federal Credit Union branch located at 961 Atlantic Boulevard in Atlantic Beach, Florida.

 h. On or about April 13, 2019, ANDREI ANDREI, a/k/a "Tony", attempted to install a skimming device on an ATM at a Navy Federal Credit Union branch located at 11270 St. Johns Industrial Park, in Jacksonville, Florida.

 i. On or about April 13, 2019, ANDREI ANDREI, a/k/a "Tony", attempted to install a skimming device on an ATM at a Navy Federal Credit Union branch located at 550 Airport Center Drive in Jacksonville, Florida.

 j. On or about April 13, 2019, ANDREI ANDREI, a/k/a "Tony", attempted to install a skimming device on an ATM at a Navy

Federal Credit Union branch located at 6100 Collins Road in Jacksonville, Florida.

k.  On or about April 14, 2019, BOGDAN ARDEI attempted to install a skimming device on an ATM at a Navy Federal Credit Union branch located at 9583 Regency Square in Jacksonville, Florida.

l.  On or about April 25, 2019, VERGIU CORNELIU GALBENU, a/k/a "Cornel", installed a skimming device on an ATM at the Delta Community Credit Union located in Snellville, Georgia.

m.  On or about May 5, 2019, VERGIU CORNELIU GALBENU, a/k/a "Cornel", using a counterfeit access device, made an unauthorized withdrawal of $360 at an ATM at the Veterans Boulevard Branch of Regions Bank located in Metairie, Louisiana from an account ending in 5733, belonging to K.S. and Z.C., whose information was intercepted without K.S. or Z.C.'s knowledge or permission.

n.  On or about May 5, 2019, ANDREI ANDREI, a/k/a "Tony", using a counterfeit access device, made an unauthorized withdrawal of $740 at the Regions Bank ATM located on Chartres Street in the French Quarter of New Orleans, Louisiana, from an

11

account ending in 0758, belonging to S.P.M., whose information was intercepted without S.P.M.'s knowledge or permission.

o.  On or about May 5, 2019, NELU ONICA, using a counterfeit access device, made an unauthorized withdrawal of $760 at an ATM at the Veterans Boulevard Branch of Regions Bank located in Metairie, Louisiana from an account ending in 5964, belonging to E.N., whose information was intercepted without E.N.'s knowledge or permission.

p.  On or about May 5, 2019, BOGDON ARDEI, using a counterfeit access device, made an unauthorized withdrawal of $720 at an ATM at the Westbank Expressway Branch of Regions Bank located in Gretna, Louisiana from an account ending in 6474, belonging to W.M., whose information was intercepted without W.M.'s knowledge or permission.

q.  On or about May 6, 2019, ADRIAN KIRALY, a/k/a "Bighi", encoded blank gift cards with unauthorized Regions Bank debit account numbers in each card's magnetic strip in New Orleans, Louisiana.

r. On or about August 21, 2019, ANDREI ANDREI, a/k/a "Tony", installed a skimming device on a Point of Sale device at a Circle K in Olive Branch, Mississippi.

s. On or about September 24, 2019, ANDREI ANDREI, a/k/a "Tony", installed a skimming device on a Citibank ATM at a Walgreens in Larchmont, New York.

t. On or about June 3, 2020, ADRIAN KIRALY, a/k/a "Bighi", met with an individual in St. Augustine, Florida, and discussed conducting cash outs at Wells Fargo ATMs in Atlanta, Georgia in the near future.

u. On or about June 11, 2020, OVIDIU MECZAK, a/k/a "Ovi," transferred several counterfeit cards encoded with unauthorized Wells Fargo Bank debit account numbers in each card's magnetic strip to another individual to be used to make unauthorized withdrawals from ATMs in Atlanta, Georgia.

v. On or about June 12, 2020, OVIDIU MECZAK, a/k/a "Ovi" directed another individual to meet with AL-KHOMOS in Atlanta, Georgia to receive several counterfeit cards encoded with unauthorized Wells Fargo Bank debit account numbers to be used to make unauthorized withdrawals from ATMs in Atlanta, Georgia.

  w. On or about June 12, 2020, NEDAL AL-KHOMOS gave counterfeit cards encoded with unauthorized Wells Fargo Bank debit account numbers to another individual to be used to make unauthorized withdrawals from ATMs in Atlanta, Georgia.

  x. On or about June 14, 2020, OVIDIU GABRIEL MUSTEATA, using a counterfeit access device, made an unauthorized withdrawal at an ATM at the Memorial Drive branch of Wells Fargo Bank located in Stone Mountain, Georgia, from an account ending in 2063, belonging to A.H.A., whose information was intercepted without A.H.A.'s knowledge or permission.

  y. On or about June 14, 2020, DORU MARIS, using a counterfeit access device, made an unauthorized withdrawal at an ATM at the Memorial Drive branch of Wells Fargo Bank located in Stone Mountain, Georgia.

All in violation of 18 U.S.C. § 1029(b)(2).

### FORFEITURE

1. The allegations contained in Count One of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of 18 U.S.C. §§ 982(a)(2)(B) and 1029(c)(1)(C).

2.     Upon conviction of a violation of 18 U.S.C. § 1029, the defendants,

ADRIAN KIRALY,
a/k/a "Bighi"
ANDREI ANDREI,
a/k/a "Tony"
BOGDAN ARDEI,
NELU ONICA,
VERGIU CORNELIU GALBENU,
a/k/a "Cornel"
OVIDIU MECZAK,
a/k/a "Ovi"
NEDAL AL-KHOMOS,
OVIDIU GABRIEL MUSTEATA, and
DORU MARIS,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(B), any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of such violation and, pursuant to 18 U.S.C. § 1029(c)(1)(C) any personal property used or intended to be used to commit the offense.

3.     The property to be forfeited includes, but is not limited to, an order of forfeiture for at least $112,780.00 obtained from the offense, which represents the proceeds of the offense.

4.     If any of the property described above, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. §§ 982(b)(1) and 1029(c)(2).

A TRUE BILL,

_____
Foreperson

MARIA CHAPA LOPEZ
United States Attorney

By: _____
Julie Hackenberry
Assistant United States Attorney

By: _____
Frank M. Talbot
Assistant United States Attorney
Chief, Jacksonville Division

16

FORM OBD-34
8/11/20 Revised

No. _____

# UNITED STATES DISTRICT COURT
Middle District of Florida
Jacksonville Division

THE UNITED STATES OF AMERICA

vs.

ADRIAN KIRALY, et al.

## INDICTMENT

Violations: 18 U.S.C. § 1029(b)(2)

A true bill,

_____
Foreperson

Filed in open court this 19th day
of August, 2020.

_____
Clerk

Bail $ _____

GPO 863 525